ARTHUR HILL *vs.* MICHAEL AHERN & another.

Worcester.   October 3, 1882;   June 18. — 22, 1883.

A. made and delivered his promissory note, secured by a mortgage of land, to B.,
who had the mortgage recorded.   There was no consideration for the note, and
the mortgage was made by A. and received by B. with intent to defraud A.'s
creditors and on a secret trust for A.   B. afterwards returned the mortgage to
A. and offered to return the note soon.   A. told him to destroy the note, and he
promised to do so.   The mortgage thereafter remained in A.'s possession ; and,
upon B.'s death subsequently, the note was found among his papers by his ad-
ministrator, who demanded payment of A. and threatened to foreclose the mort-
gage.   A., to protect himself against the mortgage and to have it set aside by
proceedings in equity, borrowed a sum of money of C. and gave his promissory
note therefor, secured by a mortgage upon the same premises.   C., when he lent
the money and took the mortgage, knew of the mortgage to B., and of A.'s pur-
pose in borrowing the money, and participated therein, and did so with the be-
lief that the first mortgage was invalid, and in order that A. might have such
benefit as he could derive from the enforcement of the second mortgage against
the first.   *Held,* that C., to the extent of his debt, stood in the position of a *bona
fide* purchaser with notice ; and that his mortgage was entitled to priority over
the first mortgage.   FIELD & DEVENS, JJ., dissenting.

W. ALLEN, J.   This is an appeal from a decree that the
mortgage held by the plaintiff have priority over the mortgage
made by the defendant Ahern to Richard Long, and held by the
defendant Phipps as administrator of his estate ; and enjoining
Phipps against enforcing or transferring his mortgage, except
subject to the mortgage of the plaintiff.

The material facts, as found by the master, and shown by the
evidence reported by him, are as follows.   In June, 1869, Ahern
gave his note for $900 to Long, and executed the mortgage to
him to secure the note.   There was no consideration for the note,
and the mortgage was made by Ahern and received by Long with
intent to defraud the creditors of Ahern, and on a secret trust for
Ahern.   The note and mortgage were delivered to Long, and he
had the mortgage recorded forthwith.   About three months
after the execution of the mortgage Long handed it to Ahern,
saying that there was his mortgage, and offering to return the
note soon.   Ahern told him to destroy the note, and he said that
he would do so.   The mortgage thereafter remained in Ahern's
possession.   After the death of Long, in 1877, the note was
found among his papers, and came into the possession of his

administrator, who made demand upon Ahern for payment, and threatened to foreclose the mortgage. Ahern, for the purpose of protecting himself against the mortgage, and of having it set aside by proceedings in equity, borrowed, in May, 1879, $600 of the plaintiff, and gave his note therefor and a mortgage to secure it upon the same premises. The plaintiff, when he lent the money and took the mortgage, knew of the Long mortgage, and of Ahern's purpose in borrowing the money, and participated therein, and lent the money and took the mortgage believing that the first mortgage was invalid, and in order that Ahern might have such benefit as he could derive from the enforcement of the second mortgage against the first.

Upon these facts, the plaintiff was a purchaser for value. The defendant Phipps contends that he was not a *bona fide* purchaser, and therefore not entitled to a decree. The fact that the plaintiff had notice of the prior mortgage does not show that he did not act in good faith in taking his mortgage with the knowledge that it would have priority over the other. *Ricker* v. *Ham*, 14 Mass. 137. *Clapp* v. *Leatherbee*, 18 Pick. 131. In *Ricker* v. *Ham*, Chief Justice Parker said: " We apprehend the term *bona fide*, as used in the law upon this subject, means only that the purchase shall be a real and not a feigned one; otherwise the knowledge would not be held immaterial, as it is in all the books."

The plaintiff is an actual purchaser from Ahern, and can be under no greater obligation of good faith toward the defendant than Ahern was under to Long. But Long paid nothing for his mortgage, and held it under a secret trust for Ahern. If Ahern could not enforce that trust, it was not because it would have been bad faith in him to have done so, but because he was prohibited from so doing by considerations of public policy. As between the parties, good faith required Long to give up and discharge the mortgage, and if the plaintiff has succeeded to Ahern's rights, but without his disability, there can be no question of bad faith in attempting to enforce them. The only question that can be raised is whether the plaintiff partakes of Ahern's disability to assert his rights. The defendant Phipps contends that this suit is for the benefit of Ahern, and that he is the real party to it. The facts do not sustain this position.

The plaintiff's mortgage was for money lent, and this suit is to aid in the enforcement of that mortgage. The transaction was complete. There was no right reserved to Ahern, — no secret trust for him, — and no obligation for him was assumed by the plaintiff. The suit is brought by the plaintiff to enforce a right which belongs to him ; it is his suit, and the right established by it will be his right. The consequent benefit to Ahern will be an incident to the establishment of the plaintiff's right, affecting a third person, and not the defendant. In taking his mortgage with knowledge of the prior mortgage, the presumed intent of the plaintiff was to defeat the prior mortgage. The act with that intent was lawful, and it cannot be rendered invalid, nor the rights and remedies which the plaintiff acquired by it against defendant Phipps be affected, by the fact that the plaintiff's motive was to benefit another rather than to make profit for himself.

In the opinion of a majority of the court, the plaintiff stands, to the extent of his debt, in the position of a *bona fide* purchaser with notice, and not as a mere representative of Ahern, and is entitled to relief as such purchaser.          *Decree affirmed.*

DEVENS, J., dissenting. I regret that I am unable to concur with the majority of the court in their decision of this case. The mortgage made by Ahern to Long was fraudulent, and intended by both parties to delay and defeat the creditors of Ahern. For reasons of public policy, both parties to such a transaction are left in the situation in which they have placed themselves, and it could not be avoided either in equity or at law by Ahern. It might, however, be avoided by creditors or subsequent *bona fide* purchasers, and this even if such purchasers had knowledge of the existence of the former conveyance. *Ricker* v. *Ham*, 14 Mass. 137. *Clapp* v. *Leatherbee*, 18 Pick. 131. If, therefore, the plaintiff had honestly, for a valuable consideration bought the mortgaged estate, or if he had actually advanced money upon the security furnished by it, and this was the whole transaction, the disability which affects Ahern would not affect him, and he would be sustained in asserting a title superior to that under the fraudulent mortgage. The incidental benefit which a fraudulent mortgagor has in

being able to convey a good title, or at least the means of asserting one, while he does not himself possess one, is deemed properly to belong to him.

But, while the term *bona fide*, as used in the law on this subject, does not mean that the purchaser must be without knowledge of the former conveyance, it does mean that the purchaser shall be a real and not a feigned one, made for the purpose of investing a purchaser with a title. Any proceeding to set aside the fraudulent deed or mortgage must be in the interest and for the benefit of the purchaser, who is a stranger to the fraud, even if subsequently, and previously to the conveyance, he is informed of it. If the object of the transaction, mutually participated in by vendor and purchaser, is but to go through the form of a conveyance, and if the suit, when brought to establish the title obtained by such a purchase, is a suit in the interest and for the benefit of the original fraudulent grantor, the name of the subsequent purchaser being used for this purpose, even if money or other valuable consideration actually passed from him, the suit should not be maintained. To permit this would be to allow the fraudulent grantor, by a simple evasion, to extricate himself from the embarrassing position in which he had placed himself by his own knavery, and where the law intended to leave him. It would reduce a rule long established on grounds of public policy to one of the most purely formal character.

The case at bar, in my view, is the one above stated. It is found that Ahern, the fraudulent grantor, borrowed the sum of $600 " from the plaintiff, for the purpose of enabling the plaintiff, but in the interest of Ahern and for his benefit, to bring the bill in this suit." It is further found " that the plaintiff knew of the purpose last aforesaid of Ahern, believed it was lawful, and lent him his money and took the note and mortgage in that belief, and for the purpose of bringing this suit for the benefit of Ahern."

In a suit, whether at law or in equity, brought under such circumstances, the plaintiff should stand as the representative of Ahern, and be affected by a similar disability.

In this dissent Mr. Justice Field concurs.

*H. E. Fales*, for the plaintiff.

*L. H. Wakefield*, for Phipps.